Rockingham
No. 79-151

JOYCE HANRAHAN

v.

CITY OF PORTSMOUTH

December 28, 1979

*McManus & Johnson*, of Dover (*Anthony A. McManus* orally), for the plaintiff.

*Charles M. Eldredge*, city attorney of Portsmouth, by brief and orally, for the defendant.

*Maurice J. Murphy, Jr.*, of Portsmouth, by brief and orally, for the intervenor, Portsmouth Savings Bank.

DOUGLAS, J.    The question in this case is whether the Portsmouth Historic District Commission, in its consideration of an application for a permit to demolish a building within an historic district, conformed to the requirements of RSA 31:89-a, :89-f, and certain sections of the Portsmouth historic district ordinance.

The Portsmouth Savings Bank owns a building at 179 Court Street that is within one of Portsmouth's historic districts. On September 12, 1977, the Portsmouth historic district commission, after a hearing, approved by a four-to-two vote the bank's application for a permit to demolish the building. The bank intends to use the space for a parking lot.

The plaintiff, a citizen of Portsmouth, appealed the commission's decision to the Portsmouth Zoning Board of Adjustment pursuant to RSA 31:89-h. After the proper notice, the board held a public hearing de novo on October 25, 1977, at which it heard evidence for and against demolition approval. By a three-to-three vote, the board failed to overturn the commission. A motion for rehearing was denied.

The plaintiff appealed to superior court pursuant to RSA 31:77. The Master (*Mayland H. Morse, Jr.*, Esq.) recommended that the board's decision not be set aside. *Mullavey*, J., approved the report, denied a motion for stay of judgment, and reserved and transferred all questions of law to this court.

The plaintiff contends that there is a legal presumption against change in historical districts. She argues that in requesting

permission to demolish its building the bank is in essence asking for a variance. Such a request, the plaintiff submits, carries with it the burden of proving that the proposed change serves the purpose of historical districting as outlined in RSA 31:89-a and section 10-1002 of the Portsmouth historical district ordinance, and that it comports with certain considerations specified in section 10-1004(A) of the ordinance.

First we observe that neither the statute relating to historic districts, RSA 31:89-a to 31:89-*l*, nor the Portsmouth ordinance contains any language resembling that in RSA 31:72 III, which sets out the elements of a case for a variance. Further, we do not read the respective statements of purpose, RSA 31:89-a, and section 10-1002 of the city ordinance, to explicitly impose a burden of proof on any party.

The plaintiff next argues that the historic district commission failed to comply with the city ordinance. She cites section 10-1004(A) and points out that in reviewing an application for a permit the commission must "take into account the purpose of this ordinance" and "give consideration" to certain factors. The ordinance's statement of purpose, section 10-1002, states that:

> The heritage and economic well-being of the City will be strengthened by (a) preserving its architectural and historic setting; (b) conserving property values in such district(s); (c) fostering civic beauty; (d) strengthening the local economy; (e) promoting the use of historic or architecturally significant buildings for the education, pleasure, and welfare of the citizens of the municipality.

Section 10-1004(A), entitled "Scope of Review," requires that the commission "give consideration" to the following:

> (1) The historical or architectural value of the building or structure(s) and its setting;
>
> (2) The general compatibility of exterior design, arrangement, texture, and materials proposed to be used in relationship to the existing building or structures and its setting or if new construction, to the surrounding area;
>
> (3) The general size and scale of new construction in relationship to the existing surroundings including consideration of such factors as to the building's overall height, width, street frontage, number of stories, type of

roofs, facade openings (windows and doors), and architectural details;

(4) Other factors, including yards, off-street parking space, location of entrance drives, sidewalks, signs, landscaping which might affect the character of any building or structure within the district, and any other factor which relates to the appropriate setting for such structure or grouping of structures;

(5) The special character of the area including whether or not it is primarily residential or commercial;

(6) The economic activity of the building and the needs of that activity and as it relates to the welfare of the community.

■ The plaintiff's position is that because the ordinance requires the commission to "take into account" the purpose of the ordinance and to "give consideration" to the factors listed in section 10-1004(A), *evidence* relating to each consideration must be taken at the hearing on the application. We do not read the ordinance to impose such a requirement. Our research discloses no case in which the phrases "take into account" or "give consideration to," when used in a statute, have been held to require the formal taking of evidence.

However, we agree with the plaintiff's general thesis that the commission did not have before it sufficient information to support the conclusions that we believe are statutorily required before a permit application can be acted upon. For that reason we do not reach the issue whether the record in this case is fatally defective for want of specific findings of fact.

■ The Portsmouth historic district ordinance enumerates the purposes of the statute in section 10-1002 and specifically lists certain important factors in section 10-1004(A). The commission is directed to "take into account" and "give consideration to" these purposes and factors when it considers an application for change within the historic district. Clearly the commission, in any deliberation concerning a permit application, must do two things: first, it must reach a reasoned determination whether the permit, if granted, will serve the purposes of the statute. Second, it must analyze the proposed change with reference to the considerations enumerated in section 10-1004(A).

■ ■ RSA 31:89-f places on the commission the duty to reach a reasoned decision. Furthermore, the phrases "take into account" and

"give consideration to" require the commission to do more than merely ponder or reflect on the issues raised in sections 10-1002 and 10-1004(A); a group assessment of information is required before a decision is reached. *See City of Davis v. Coleman*, 521 F.2d 661 (9th Cir. 1975). Finally, we note that this court's duty is to inquire into the reasonableness of the commission's decision. *See* RSA 31:78, :89-f. We find the commission's decision unreasonable.

Our examination of the record reveals that the only testimony before the commission was that of a bank representative, Attorney Murphy, relating to the bank's need for a parking lot and to the economics of the demolition from the point of view of the bank and the city. Mr. Murphy discussed the bank's need for more customer parking and the unfeasibility of maintaining the building in question. He touched upon the building's condition and offered his view that neither the building in question nor the buildings surrounding it had "any great historic value." Mr. Murphy also discussed the bank's history as a civic-minded business and major taxpayer, as well as the nature of the sidewalk that would run next to the proposed parking lot. The commission also had before it memoranda from the director of the planning board and from Strawbery Banke, Inc., outlining in detail the historic nature of the Italianate nineteenth century structure and opposing its destruction. In sum, the commission appears to have had before it little more than the unsubstantiated opinions of the permit applicant in favor of demolition. The commission, therefore, did not have before it sufficient information to justify demolition in light of such questions as whether the proposed demolition would preserve the "architectural and historic setting" of the area, foster "civic beauty," or be compatible with the "special character of the area."

The Portsmouth Savings Bank, the intervenor in this case, argues in its brief that the commission members must be deemed to have fulfilled their statutory duty to consider the required factors because the record reveals that some of the members drove by the building in question and reflected on how the area would look without it. One of them noted that he and his son felt the building was "yucky." However, under the statutes applicable to this case, the commission had a duty to make a group assessment of information that was more than mere personal opinion of one or more members. Our legislature, when it provided for the existence of historic district commissions, clearly intended that the commission should gather its own facts.

It shall be the duty of the commission to request reports and recommendations regarding the feasibility of the

applicant's proposal from the planning board, fire chief, building inspector, health officer and such other administrative officials who may possess information pertinent to the application. It shall be the duty of the commission to seek advice from such professional, educational, cultural or other groups or persons as may be deemed necessary for the determination of a reasonable decision. The commission shall have the power to engage such technical assistance and consultants as may be deemed necessary to carry out the purposes of this subdivision. . . .

RSA 31:89-f. We find that the commission in this case did not have before it sufficient information to enable it to reach reasoned decisions with regard to the enumerated purposes and factors that it must consider. We therefore remand to the commission for a rehearing in accordance with this opinion, but do not suggest what result should be reached upon that rehearing. Because we hold as we do, we do not reach the plaintiff's questions concerning appeal proceedings before the zoning board of adjustment and the superior court.

*Exceptions overruled in part; sustained in part; remanded.*

All concurred.