Rockingham
No. 2007-589

SCOTT OUELLETTE & a.

v.

TOWN OF KINGSTON

Argued: May 21, 2008
Opinion Issued: August 15, 2008

*Michael L. Donovan*, of Concord, by brief and orally, for the plaintiffs.

*Cleveland, Waters and Bass, P.A.*, of Concord (*David W. Rayment* and *Mark S. Derby* on the brief, and *Mr. Rayment* orally), for the intervenor, Konover Development Corporation.

*Baldwin, Callen & Ransom P.L.L.C.*, of Concord (*Carolyn W. Baldwin* on the brief), for the New Hampshire Preservation Alliance, as *amicus curiae*.

HICKS, J. The plaintiffs, Scott Ouellette and other Kingston residents, appeal an order of the Superior Court (*McHugh*, J.) affirming the decision of the Town of Kingston Zoning Board of Adjustment (ZBA) granting approval to the intervenor, Konover Development Corporation (Konover), to construct a supermarket within the town's historic district. We affirm.

The trial court found or the record supports the following. In April 2006, Konover applied to the Town of Kingston Historic District Commission (HDC) for a certificate of approval to construct a supermarket on an eleven-acre lot abutting Route 125 and Main Street in Kingston. *See* RSA 676:9 (1996). By ordinance, the entire lot is considered to be within the town's Historic District I due to the lot's frontage within that district,

although two-thirds of the lot actually lies within the rural residential district. KINGSTON ZONING AND BUILDING CODE, art. 4.10 (hereinafter HISTORIC DISTRICT REGULATIONS), § 4.10.2. Developers wishing to build within the town's historic district are required to obtain a certificate of approval from the HDC before applying for a building permit. *Id.* § 4.10.6; RSA 676:9, II.

Kingston's Historic District I is primarily located along Main Street and extends 350 feet on either side of the street. HISTORIC DISTRICT REGULATIONS § 4.10.2. The Historic District Regulations describe Historic District I and the uses permitted within the district, in pertinent part, as:

[A]n integrated area of mixed uses being predominately residential with small retail businesses for convenience shopping. . . .

In this District, the following uses will be permitted in a manner not inconsistent with the character of the District[]:

. . . .

b. Retail stores principally designed to serve shoppers from their community. . . .

*Id.* § 4.10.4.1.

When reviewing an application, the HDC is required to consider the following factors, among others:

a. The effect that the exterior facade of the building will have when viewed in relation to the surrounding buildings in the district.

b. The change, if any, in the amount of noise, congestion and traffic that the proposed building or use will create in the district.

c. Whether the proposal is of a design, or of materials, or for a purpose or use inconsistent with and detrimental or injurious to buildings and purposes or uses upon adjoining lands and whether such proposal is such that it will detract from the character and quiet dignity of the Kingston Historic District.

*Id.* § 4.10.9.

After holding several hearings, the HDC denied Konover's application for the following reasons: (1) the proposal did not accord with the district's description and permitted uses because the 36,000-square-foot proposed supermarket is not a small retail business as compared to other retail businesses in the district, which are all smaller than 4,000 square feet, and because it is not principally designed to serve Kingston residents; (2) the increase in traffic and noise "would seriously impact the residential

character" and "negatively impact the 'walkable' nature" of the district; (3) the proposal "was not of a design and purpose consistent with adjoining lands, and . . . would detract from the character and quiet dignity" of the district; and (4) the proposal was "contrary to the wording and the intent of the Master Plan," which provides that "[t]o the extent possible, planning efforts will direct development . . . away from areas of historic character." Konover appealed the HDC's decision to the ZBA pursuant to RSA 676:5 (1996).

The ZBA held a public hearing on the application, at which new evidence was presented. An issue arose as to the standard of review the ZBA should apply to the HDC's decision. The plaintiffs argued for an "error" standard of review, which their attorney described as: "If [the] record [before the HDC] has enough evidence in it to support the decisions and the determinations that the [HDC] made, . . . you have to defer to that judgment . . . . The standard is error, did they make an error in how they viewed the evidence and how they interpreted your ordinance?"

In its notice of decision, the ZBA stated that it reviewed the HDC's decision "to determine whether the ZBA felt that the HDC ha[d] 'erred' in making its decision." The ZBA concluded that all of the HDC's findings were "in error" and granted approval to Konover to construct the supermarket. The record reveals that the ZBA actually held a *de novo* hearing on the application and made its own, separate findings. The ZBA also noted in a footnote that although it did not believe the applicable standard of review was as "onerous" as that championed by the plaintiffs, "based on the evidence," the ZBA would have reached the same conclusion under the plaintiffs' proposed standard of review.

In addition, the ZBA specifically found that: (1) the proposed supermarket is consistent with the other uses in the historic district; (2) "the proposed supermarket is relatively small"; (3) the store is "principally designed to serve shoppers from Kingston"; (4) the increase in traffic and noise would not be significant; (5) "there would be no impact on the 'walkable' nature" of the district; (6) "[t]he proposed building will not be detrimental or injurious to buildings or purposes or uses upon adjoining lands and will not detract from the character and quiet dignity" of the district; and (7) the proposal is consistent with the Master Plan.

The plaintiffs appealed to the superior court, arguing, *inter alia*, that the HDC's findings are entitled to deference and, therefore, the ZBA applied an incorrect standard of review. The court disagreed and ruled that, pursuant to the overall statutory scheme, the proper standard of review is *de novo*. The court noted, however, that if we were to hold on appeal that

*de novo* review was improper and that a more deferential standard applies, such as clear error, there was "no basis for [the] Court to find clear error in the HDC's decision."

On appeal the plaintiffs argue that the superior court erred by: (1) declining to find that clear error was the ZBA's proper standard of review; (2) affirming the ZBA decision when the court found no basis for clear error in the HDC decision; (3) affirming the ZBA decision where the ZBA substituted its judgment for the judgment of the HDC; and (4) giving deference to the ZBA's interpretation of the Historic District Regulations.

*I. Standard of Review*

The plaintiffs argue that the land use statutes, when considered as a whole, contemplate that the ZBA review HDC decisions using a clear error standard of review, and that because the trial court found no basis for clear error in the HDC decision, the ZBA's decision must be reversed.

Appeals before the ZBA are governed by statute. *See* RSA 677:17 (1996); RSA 676:5; RSA 674:33 (Supp. 2007). RSA 677:17 provides: "Any person or persons jointly or severally aggrieved by a decision of the historic district commission shall have the right to appeal that decision to the zoning board of adjustment in accordance with the provisions of RSA 676:5 and RSA 677:1-14." RSA 677:17. RSA 676:5 provides that appeals to the ZBA "concerning any matter within the board's powers as set forth in RSA 674:33 may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer." RSA 676:5, I. The parties do not dispute that the HDC qualifies as an "administrative officer" under the statute.

They do dispute, however, the proper interpretation of RSA 674:33, which provides, in pertinent part:

> I. The zoning board of adjustment shall have the power to:
>
> (a) Hear and decide appeals if it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of any zoning ordinance adopted pursuant to RSA 674:16 . . . .
>
> . . . .
>
> II. In exercising its powers under paragraph I, the zoning board of adjustment may reverse or affirm, wholly or in part, or may modify the order, requirement, decision, or determination appealed from and may make such order or decision as ought to be made and, to that end, shall have all the powers of the administrative official from whom the appeal is taken.

RSA 674:33, I, II. The trial court ruled that this language suggests that what is contemplated is a *de novo* review.

> We review the trial court's statutory interpretation *de novo*. We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute.

*Town of Rye Bd. of Selectmen v. Town of Rye Zoning Bd. of Adjustment*, 155 N.H. 622, 624 (2007) (quotation and citation omitted).

The plaintiffs argue that, pursuant to the overall statutory scheme, the ZBA is required to apply a clear error standard of review to HDC decisions. "[C]lear error" is defined as a "decision or action that appears to a reviewing [body] to have been unquestionably erroneous." BLACK'S LAW DICTIONARY 582 (8th ed. 2004). The plaintiffs define "error" as: "a mistake of law or fact in a . . . judgment, opinion or order."

The plaintiffs first argue that pursuant to RSA 674:33, I(a), "an administrative appeal may be brought only for alleged error. Inherent in that limitation is that the ZBA may reverse the decision of the administrative official only if the appealing party establishes *error* in the decision of the administrative official." We agree that the statute provides that the ZBA may "[h]ear and decide appeals if it is *alleged* there is error." RSA 674:33, I(a) (emphasis added). We do not agree, however, that RSA 674:33, I(a) provides any instruction regarding the standard of review the ZBA must apply; it is merely a pleading requirement.

■ There is no statutory provision that expressly authorizes the ZBA to review appeals from decisions of administrative officials *de novo*. However, RSA 674:33, II confers upon the ZBA "all the powers of the administrative official from whom the appeal is taken." When hearing and deciding an appeal, therefore, the ZBA is authorized by statute to step into the shoes of the administrative official. Although the words "*de novo*" do not appear in the statute, the authority to act as the HDC is its functional equivalent. *Cf. Town of Hinsdale v. Town of Chesterfield*, 153 N.H. 70, 73 (2005) ("*De novo* review means that the reviewing [body] decides the matter anew, neither restricted by nor deferring to decisions made below.").

Historically, the language governing appeals to the ZBA has changed little since the zoning statutes were enacted in 1925. *See* Laws 1925, 92:7.

It is nearly verbatim to that in the Standard State Zoning Enabling Act (the Act) disseminated by the United States Department of Commerce in the early 1920s. *Boccia v. City of Portsmouth*, 151 N.H. 85, 89-90 (2004); *see also* U.S. DEP'T OF COMMERCE, A STANDARD STATE ZONING ENABLING ACT §§ 7.1, 7.3 (rev. ed. 1926). The Act has been adopted, at least in part, by nearly every state. *See Osterhues v. Bd. of Adjust. for Washburn*, 698 N.W.2d 701, 709 n.10 (Wis. 2005).

Interpreting language nearly identical to RSA 674:33, the majority of courts hold that the proper standard of review is *de novo. See, e.g., id.* at 711 ("The Board [of Adjustment] has the authority to perform a substantive, de novo review of the [Zoning] Committee's decision, and may take additional evidence if necessary."); *Cerame Family Trust v. Town of Perinton ZBA*, 776 N.Y.S.2d 660, 661 (N.Y. App. Div. 2004) (upholding remand to ZBA for *de novo* review of building permit denial by town's commissioner of public works); *City and Co. of Denver v. Bd. of Adjustment*, 55 P.3d 252, 256 (Colo. Ct. App. 2002) ("[The relevant] Sections . . . of the [Denver Revised Municipal] [C]ode expressly provide that the board has all the powers of the officer or department from whom the appeal is taken. . . . The board[] [of adjustment's] review therefore is de novo."); *Caserta v. Zoning Bd. of Appeals*, 626 A.2d 744, 748 (Conn. 1993) ("[I]t is clear from both the entire statutory scheme and our zoning case law that the zoning board hears and decides . . . an appeal [from a zoning enforcement officer] de novo . . . ." (quotation omitted)); *see also* 4 K. YOUNG, ANDERSON'S AMERICAN LAW OF ZONING § 22.05, at 15 (4th ed. 1997) ("[A]n appeal [to the board of adjustment] involves a de novo hearing.").

We are persuaded by the majority rule that the ZBA may hear appeals *de novo*, based upon the broad powers granted to it by statute. *See* RSA 674:33; *see also Peabody v. Town of Windham*, 142 N.H. 488, 492 (1997) ("The board has broad authority on subjects within its jurisdiction.").

Citing the statutory provisions governing Historic Districts, the plaintiffs nevertheless argue that the clear error standard is more consistent with the entire land use statutory scheme. *See* RSA 674:45 (1996); RSA 674:46-a, III (1996); RSA 673:4, II (1996). RSA 674:45 lays out the purposes of historic districts; RSA 674:46-a sets forth the powers and duties of historic district commissions; and RSA 673:4, II discusses, among other things, the qualifications for members of a historic district commission. While we agree with the plaintiffs that these statutes demonstrate that preserving historic areas "serve[s] [an] important public purpose[]" and that historic district commissions, whose members have "special qualifications," "are responsible for administering historic district ordinances and regulations within historic districts," we do not find that they speak to the legislature's intent regarding the standard of review to be applied to appeals before the ZBA.

The plaintiffs also cite *Hanrahan v. City of Portsmouth*, 119 N.H. 944 (1979), and argue that applying a *de novo* standard of review negates our warning that the historic district commission statutes require more than "merely pondering or reflecting on the issues." *Hanrahan*, 119 N.H. at 948. We first note that in *Hanrahan*, the historic district commission decision was appealed to the zoning board of adjustment, which conducted a hearing *de novo*. *Id.* at 945. This aside, our holding in that case, which involved whether the historic district commission had followed requirements imposed upon it by statute and local ordinance when reviewing a permit application, was limited to the powers and duties of the historic district commission, and therefore cannot be read as an indication of the standard of review that the ZBA must apply to appeals.

▪ Finally, the plaintiffs point out that decisions of historic district commissions in municipalities which do not have ZBAs are appealed directly to the superior court pursuant to RSA 677:18 (1996), and that the superior court is required by RSA 677:6 (1996) to apply a more deferential standard of review. *See* RSA 677:6 ("The order or decision appealed from shall not be set aside or vacated, except for errors of law, unless the court is persuaded by the balance of probabilities, on the evidence before it, that said order or decision is unreasonable."). The plaintiffs argue that it "does not make sense to conclude that the legislature intended to have two different standards of review for HDC decisions." We disagree. The superior court affords deference and applies a stricter standard of review to appeals of decisions from local land use boards because the members of these boards are more "familiar[] with the area involved." *Vannah v. Bedford*, 111 N.H. 105, 108 (1971), *overruled on other grounds by Cook v. Town of Sanbornton*, 118 N.H. 668, 671 (1978). Where a town has a zoning board of adjustment that hears appeals, however, it is not necessary for the board to apply the same level of deference as the superior court because the board itself is composed of members of the community. Accordingly, we find the plaintiffs' argument on this point unavailing.

In considering this matter, we have not overlooked our jurisprudence regarding judicial review when the legislature is silent as to the proper standard. *See Town of Hudson v. Baker*, 133 N.H. 750, 752 (1990) ("If the legislature desires a full *de novo* hearing on appeal, it knows how to require it by using those words." (quotation omitted)); *Appeal of Doherty*, 123 N.H. 508, 509 (1983) (holding same in memorandum opinion); *Allard v. Power*, 122 N.H. 27, 28 (1982) (holding same in memorandum opinion). We note that this line of decisions might well have produced a contrary result were the appellate body here at issue a court; nothing herein is intended as either a departure or adherence to that line of decisions.

Accordingly, because we hold that the trial court properly found that the ZBA reviews decisions of the HDC *de novo,* we need not reach the plaintiffs' argument that the ZBA decision must be reversed because the court found no basis for clear error in the HDC decision.

## II. The ZBA Decision

The plaintiffs next argue that "[t]he superior court erred by affirming a ZBA decision that allowed the ZBA to merely substitute its uninformed personal opinions for the judgment of the HDC." They assert that the ZBA failed to discuss several findings of the HDC, ignored important evidence and acted unreasonably. The trial court held that it could not find the decisions of the ZBA either unlawful or unreasonable.

The trial court's review in zoning cases is limited. The factual findings of the ZBA are deemed *prima facie* lawful and reasonable, and will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of the probabilities, on the evidence before it, that the ZBA's decision is unreasonable. *Town of Rye,* 155 N.H. at 627. We will uphold the trial court's decision on appeal unless it is not supported by the evidence or is legally erroneous. *Id.*

■ Given our holding that *de novo* is the proper standard of review, we find the plaintiffs' arguments that the ZBA substituted its own judgment for that of the HDC or that it ignored certain evidence that the HDC found pertinent are unavailing. Under the *de novo* standard, the ZBA is not required to give deference to the findings or rulings of the HDC; substituting its judgment for the HDC or failing to discuss evidence before the HDC, therefore, does not constitute grounds for reversal.

As to the plaintiffs' assertions that the ZBA acted unreasonably based upon the evidence before it, the trial court found that

> none of the factual issues under consideration by both boards in this case fall into the black or white category. For example, reasonable persons could disagree as to whether or not the supermarket was to be built in a predominantly residential area[,] or whether it would fit the definition of a small retail business.

Our review of the record shows that there was evidence to support the findings of the ZBA.

First, the plaintiffs argue that the ZBA's finding that the proposed supermarket would be consistent with other uses in the historic district was unreasonable. The ZBA found that "while the predominant use in the district may be residential, there are numerous mixed uses throughout the

district and . . . the inclusion of a supermarket on the edge of the district would not be out of keeping with the land use pattern in the district." The ZBA listed several large nonresidential uses in the area including two schools, the village market, Kingston Plaza and a restaurant, among others. The plaintiffs argue that "other commercial uses are more than 3000 feet away," the supermarket cannot be compared to other large civic buildings such as schools since these uses are permitted in the district regardless of size, and the proposed location is contrary to "Kingston's New England Village pattern of development," where commercial uses are placed in the center of the village and the zoning in the surrounding area does not allow commercial uses.

■ We cannot say that the ZBA's findings on this issue are unreasonable. First, the fact that other commercial uses in the historic district are more than 3000 feet away, or that large civic buildings do not equate to commercial buildings, does not contravene the ZBA's finding that there are other, nonresidential uses within the historic district such that a supermarket would not appear out of place. Second, while the village plan of development may place commercial uses in the center of the village, the town's Master Plan encourages commercial development along Route 125, which runs roughly perpendicular to the northern edge of the historic district. Third, while the zoning surrounding the proposed supermarket may not permit commercial uses, it cannot be disputed that commercial uses are permitted within the historic district and due to its frontage, the location of the proposed supermarket is considered to be within the historic district. HISTORIC DISTRICT REGULATIONS § 4.10.2. Accordingly the trial court did not err in ruling that the ZBA's findings were not unreasonable.

Next, the plaintiffs argue that the trial court erred in ruling that the ZBA's finding that the proposed supermarket constituted a "small retail business" was not unreasonable. Alternatively, they argue that this issue concerns ordinance interpretation, and courts do not have to defer to the ZBA's interpretation because the construction of an ordinance is a question of law.

The ZBA found that the proposed supermarket was consistent with section 4.10.4.1 of the Historic District Regulations, which provides that the historic district is an "integrated area of mixed uses being predominantly residential with small retail businesses for convenience shopping." Specifically, the ZBA found that "the size of the 'small retail business' is subjective [and] . . . at 36,000 [square feet], the proposed supermarket is relatively small as today's supermarkets go." The plaintiffs argue that the size of the

proposed supermarket cannot be compared to other supermarkets but must be compared with the size of other businesses within the historic district.

We agree that this question involves the interpretation of the regulations, and is therefore a question of law, which we review *de novo. Stankiewicz v. City of Manchester*, 156 N.H. 587, 589 (2007). The traditional rules of statutory construction generally govern our review of ordinances and zoning regulations. *Id.* We construe the words and phrases of the regulations according to the common and approved usage of the language. *Id.* In addition, we determine the drafters' intent as expressed in the words of the regulations considered as a whole. *See City of Rochester v. Corpening*, 153 N.H. 571, 573 (2006).

The regulations permit retail stores within the historic district provided that they are: (1) "in a manner not inconsistent with the character of the District[]"; and (2) "principally designed to serve shoppers from their community." HISTORIC DISTRICT REGULATIONS § 4.10.4.1.

■ We interpret "character of the District" to refer to the following description of the district:

> an integrated area of mixed uses being predominately residential with small retail businesses for convenience shopping. The area also contains a variety of public buildings serving religious and civic functions, dining facilities, customary home occupations, traditional home arts and crafts, gardening, domestic animal raising and service professions. The area is characterized from its general appearance along the Plains as typical of a small New England village containing many fine examples of colonial architecture as well as a mix of other architectural types.

*Id.* Given the plain language of the regulations, we do not believe that the proper inquiry is the meaning of the phrase "small retail businesses," *id.*, and whether the proposed supermarket qualifies as such, but rather whether the proposal satisfies the two requirements of the regulations listed above. The regulations do not *require* that a proposed business constitute a "small retail business"; they require that it not be "inconsistent with the character of the District" and that it is "principally designed to serve shoppers from their community." *Id.*

■ Whether there was evidence to support these requirements involves findings of fact made by the ZBA, which the trial court must deem *prima facie* lawful and reasonable. *Town of Rye*, 155 N.H. at 627. The ZBA made findings on each of these requirements. First, the ZBA found that the proposed supermarket "would not be out of keeping with the land use

pattern in the district." Accordingly, the ZBA implicitly found that the proposed supermarket would not be inconsistent with the character of the District. HISTORIC DISTRICT REGULATIONS § 4.10.4.1. As we discussed above, there was evidence to support this conclusion. Although the proposed supermarket may not be considered small by some standards, this alone does not preclude a finding that it is "not inconsistent," *id.*, with the character of the district based upon other factors.

The plaintiffs argue that there was evidence that the increase in traffic will have a negative impact upon the character of the district, that the ZBA "misunderstood" the HDC's findings on this issue, and that the ZBA misinterpreted the testimony of the police chief and a traffic consultant. As we discussed above, however, the ZBA was entitled to conduct a *de novo* hearing on the application and was not bound by the findings of the HDC. Whether or not the ZBA "misunderstood" the HDC's findings, therefore, is irrelevant. In addition, the ZBA pointed to other evidence, which the plaintiffs do not dispute on appeal, to support its finding that traffic will not negatively affect the district. Thus, the plaintiffs failed to overcome the presumption that the factual findings of the ZBA are *prima facie* lawful and reasonable.

The ZBA also found that "this particular store is principally designed to serve shoppers from Kingston." The plaintiffs argue that the ZBA's discussion of this issue is "confusing and does not reveal a basis" for its conclusion.

According to the notice of decision, the ZBA concluded as it did based upon: (1) Konover's sales estimate for the store; (2) the smaller size of the supermarket as compared to other supermarkets; and (3) the absence of a supermarket in Kingston. Although the plaintiffs dispute the accuracy of Konover's sales estimate, they do not dispute the other findings of the ZBA on this issue. The plaintiffs, therefore, failed to overcome the presumption that the factual findings of the ZBA are *prima facie* lawful and reasonable.

Accordingly, pursuant to our limited review in zoning cases, we cannot conclude that the plaintiffs have shown that the trial court's order affirming the decision of the ZBA was unsupported by the evidence or legally erroneous.

*III. Superior Court's Review*

Finally, the plaintiffs argue that "[t]he superior court erred by believing it was bound by the determinations of the ZBA" because the "construction of a zoning ordinance is a question of law." They argue that the HDC and the ZBA disagreed as to the meaning of "small retail businesses," *id.*, that this was an issue of law, and that the ZBA's interpretation was not entitled

to deference by the trial court. We addressed this issue in section II, above, and need not repeat our discussion here.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.